# CRIMINAL COURT OF BALTIMORE CITY.

Filed March 31, 1898.

STATE OF MARYLAND
VS.
AUGUST KUHLEMAN.

*W. Calvin Chesnut* and *James Hewes* for the State.

*Edgar H. Gans* for defendant.

STOCKBRIDGE, J.—

The defendant in this case has been indicted under Section 88 of Article 27, of the Code of Public General Laws, which is directed against the manufacture out of oleaginous substances other than milk or cream of any article "designed to take the place of butter or cheese," or the sale of such manufactured product. The first count in the indictment charges the manufacture, and the second count the sale.

The traverser has demurred upon two grounds, first an alleged unconstitutionality of Section 88, and second, a supposed repugnancy between Section 88 and the two following sections.

It would be sufficient to dispose of the second cause for demurrer assigned to say that this issue was clearly raised in the case of McAllister vs. The State, 72 Md. 390, and there determined adversely to the traverser, and that therefore the question is res adjudicata. Inasmuch, however, as when the first ground of the demurrer is considered it will be necessary to understand clearly the provisions and pre-

cise meaning of Section 88, it is proper while speaking of the supposed repugnancy existing between the three sections, to see exactly what each section relates to.

Section 90 is directed against the manufacture and sale of adulterated butter or cheese, the same being made and sold as and for the product of the dairy. It is fraud or imposition practiced upon a purchaser by the sale to him as a dairy product of spurious or adulterated butter or cheese, that constitutes the offense under this section.

By Section 89 the offense is made to consist in the manufacture or sale of any article "in imitation or semblance of natural butter or cheese" produced from any animal or vegetable fats other than unadulterated milk or cream; that is the external, visual simulations of dairy-made butter or cheese, even though in the manufacture or sale the product is not claimed to be other than it really is.

In Section 88 the offense lies in the making from any oleaginous substance other than unadulterated milk or cream "any article designed to take the place of butter or cheese."

There was some uncertainty expressed by counsel at the argument as to the precise meaning of the words "designed to take the place of." It was suggested that the proper interpretation of the words was, having the semblance or appearance of, that is an imitation of; and second, that they should be construed as intended for use as a substitute for. The Court has no doubt as to the proper meaning of the words of this section. To adopt the construction first suggested would be to say that Sections 88 and 89 by providing a different penalty for the same offense were repugnant to one another, which our Court of Appeals has declared not to be the case, and would at the same time violate a well settled rule of statutory construction, which presumes that all the subsidiary provisions of an Act harmonize with each other and with the purpose of the law, and if the Act is intended to embrace several objects that they do not conflict.

See Sutherland on Statutory Construction, Sec. 215.

Since, therefore, the signification of use as a substitute for, defines a dif-

ferent offense from the two following sections, and harmonizes all three of them, it is manifestly the construction to be given, unless it violates the clear meaning of the language of the statute.

The use as a substitute for something else, was the construction placed upon the expression "designed to take the place of," by the New York Court of Appeals, in the case of People vs. Marx, 99 N. Y. 377, when that was the phraseology of the statute of that State, and such is the plain, obvious meaning of the words. And to inhibit the manufacture or sale of an article which may be used as a substitute for another, is tantamount to absolute prohibition. Thus the scope of Section 88 is the same whether regard is had to the ordinary, every-day use of the language employed in it, or whether the rule of legal construction of statutes be taken for the guide, and both accord with the decision of the Court of Appeals in the McAllister case, 72 Md. 390.

As far as the second ground of the demurrer is concerned, therefore, the demurrer will be overruled.

The question which now arises under the first cause of demurrer assigned is: Has the Legislature the power under the Constitution to absolutely prohibit the manufacture or sale of an article like oleomargarine or butterine? It is not a question as to a colorable imitation, and a fraud or deceit practiced upon purchasers. Many cases were referred to in the argument, but, with two exceptions they all turned upon the question of fraud and deceit arising out of the imitation or simulation of the product, which either did, or were liable to, deceive a purchaser. Even the case of Powell vs. Pennsylvania, 127 U. S. 678, arose under an Act which specified the imitation and adulteration of butter and cheese as constituting in part at least the offense. The only cases where the element of fraud and deceit did not enter in were the cases of The People vs. Mark, 99 N. Y. 377, and Ex parte Scott, 66 Fed. Rep. 48, and in both of these the Act prohibiting the manufacture of oleomargarine was held unconstitutional and void. But, before accepting these as conclusive of the present case, it is proper to see whether they are in accord with well settled legal principles, or whether in those cases the Courts have not gone beyond the proper exercise of their functions.

It is conceded that it is within the power of the legislative branch of the government as a police regulation in the matter of health to prohibit the manufacture or sale of that which is noxious or injurious to the citizens. In the enactment of such legislation the General Assembly of the State passes upon whether a particular manufacture is or is not injurious, and with this the Courts have nothing to do. The fact that by an unreasonable and arbitrary use of its power the Legislature places an inhibition upon the manufacture or sale of a given article or product which may or may not be injurious to the health of the community may be an abuse, but it does not disprove the existence of the power or afford any warrant for the undue usurpation of authority on the part of the Courts. The remedy must rest in the pressure of public opinion or in the ballot. Prohibitory liquor Acts are a familiar illustration of the principle, yet such Acts have been invariably sustained; the game laws of the various States, and of this State especially, are closely analogous, yet these statutes have been uniformly upheld. This Court would not, therefore, be justified, no matter what might be the view it entertained as to the wisdom or unwisdom of the Act in question, in declaring it unconstitutional and void save for the most weighty reasons, reasons far stronger than those laid down by Judges Rapello and Hughes in the cases mentioned.

The suggestion was made at the argument that Section 88 should be considered void, because in the Code it is classified under the statutes relating to fraud, rather than those relating to health. This could have hardly been intended to be taken seriously. Conceding that it is erroneously classified, it would be a sad commentary upon our law if an inadvertence or mistake in arrangement of the compiler of the Code could be taken to operate as the repeal or amendment of an Act of the Legislature. No authority was cited in support of any such proposition, and in the absence of authority, this Court will decline to establish such a precedent. The demurrer of the traverser will, therefore, be overruled.